FILED
CLERK, U.S. DISTRICT COURT

NOV 30 2009

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

ELIZABETH L. MOORE,                )  No. CV 08-3747-PLA
                                   )
            Plaintiff,             )
                                   )  **MEMORANDUM OPINION AND ORDER**
      v.                           )
                                   )
MICHAEL J. ASTRUE,                 )
COMMISSIONER OF SOCIAL             )
SECURITY ADMINISTRATION,           )
                                   )
            Defendant.             )
_____)

I.

**PROCEEDINGS**

Plaintiff filed this action on June 9, 2008, seeking review of the Commissioner's decision granting her Disability Insurance Benefits from October 29, 2004, to April 1, 2007, but denying her benefits after that time period. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 24, 2008, and July 22, 2008. The parties filed a Joint Stipulation on March 11, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on January 4, 1956. [Administrative Record ("AR") at 66, 75, 77, 532.] She has a tenth grade education and completed the GED test. [AR at 533.] She has past relevant work experience as a computer technician. [AR at 97, 103, 546.]

Plaintiff filed her application for Disability Insurance Benefits on September 27, 2005, alleging that she has been unable to work since October 29, 2004, due to breast cancer. [AR at 65, 77-82, 96-102.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 67-73.] A hearing was held on May 23, 2007, at which plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 19, 528-55.] On June 5, 2007, the ALJ determined that plaintiff was disabled from October 29, 2004, to April 1, 2007, but that the disability ended after that time. [AR at 15-28.] When the Appeals Council denied plaintiff's request for review of the hearing decision on February 25, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 6-10, 14.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. MEDICAL IMPROVEMENT AND CESSATION OF DISABILITY BENEFITS

Once the Commissioner (or ALJ) finds a claimant to be disabled, the Commissioner must follow an eight-step sequential evaluation process in determining whether the claimant's impairments have sufficiently improved to warrant a cessation of Disability Insurance Benefits. See 20 C.F.R. § 404.1594(f). The eight steps are as follows: (1) If the claimant is currently engaged in substantial gainful activity ("SGA"), disability has ended. (2) If not, and the claimant has an impairment or combination of impairments that meets or equals a listing, disability continues. (3) If the claimant does not meet or equal a listing, the ALJ will determine whether medical improvement has occurred. (4) If so, the ALJ will determine whether the improvement is related to the claimant's ability to work (i.e., to an increase in the claimant's residual functional capacity ("RFC")[1]). (5) If no medical improvement -- or no improvement related to ability to work -- has occurred, disability continues, unless certain exceptions apply.[2] (6) If there has been medical

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2] The exceptions include advances in medical technology or vocational therapy related to the claimant's ability to work; new or improved diagnostic techniques or a prior evaluation error indicating that the impairment is not as disabling as once thought; evidence that the claimant is engaging in SGA; evidence of fraud in obtaining benefits; and evidence that the claimant failed

3

improvement related to the claimant's ability to work, the ALJ will determine whether <u>all</u> the current impairments, in combination, are "severe," and, if not, disability ends. (7) If the claimant meets the "severity" criteria, the ALJ will determine the current RFC, and, if the claimant is able to do past work, disability ends. (8) If the claimant remains unable to do past work, the ALJ will determine whether the claimant can do other work, given her RFC, age, education and past work experience. If so, disability ends. If not, disability continues. 20 C.F.R. § 404.1594(f).

**B.   THE ALJ'S APPLICATION OF THE EIGHT-STEP EVALUATION PROCESS**

In this case, the ALJ determined that plaintiff became disabled on October 29, 2004.[3] [AR at 19, 22.] The ALJ also found that from October 29, 2004, through April 1, 2007, plaintiff was unable to work due to her disability. [AR at 23-25.] At step one of the medical improvement analysis, the ALJ determined that plaintiff had not engaged in SGA since the date she became disabled. [AR at 22-23.] At step two, the ALJ determined that plaintiff's impairment does not meet or equal any of the impairments in the Listing. [AR at 23.] At step three, the ALJ determined that plaintiff's disability ended on April 2, 2007, when he determined that her medical condition improved. [AR at 25.] At step four, the ALJ determined that plaintiff's medical improvement is related to her ability to work. [AR at 27-28.] Due to the ALJ's step four finding, no step five finding was necessary. <u>See</u> 20 C.F.R. § 404.1594(f)(5). At step six, the ALJ concluded plaintiff has the "severe" impairment of "status post right breast cancer." [AR at 23.] At step seven, the ALJ found that since April 2, 2007, plaintiff has had the RFC "to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday." [AR at 25–27.] The ALJ also determined at step seven that beginning on April 2, 2007, plaintiff was capable of performing her past relevant work as a computer technician. [AR at 28.] Accordingly, the ALJ determined that plaintiff's period of disability ended on April 2, 2007. [Id.]

---

to follow prescribed treatment. 20 C.F.R. §§ 404.1594(d)-(e), (f)(5).

[3]   The ALJ also determined that plaintiff is insured for Disability Insurance Benefits purposes through December 31, 2009. [AR at 19.]

4

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly considered (1) the medical evidence, and (2) plaintiff's testimony concerning her subjective limitations. [Joint Stipulation ("JS") at 4-7, 12-17, 21.] As explained below, the Court agrees with plaintiff and remands the matter for further proceedings.

### A. MEDICAL EVIDENCE

Plaintiff asserts that in determining that her medical condition improved by April 2, 2007, the ALJ failed to properly consider the medical evidence, including the findings of Dr. Mark Tan, one of plaintiff's treating physicians. [JS at 4-7.]

Plaintiff testified that on June 10, 2004, she felt a lump on her breast. [AR at 533.] Her medical records reveal that on October 26, 2004, plaintiff underwent a lumpectomy and was later diagnosed with breast cancer. [AR at 153-62.] Plaintiff received chemotherapy from December 2004 to April 2005, and then radiation therapy until July 2005. [AR at 188-94, 270.] Plaintiff's doctors found that she has a genetic mutation that gives her a high risk of developing breast and ovarian cancer. [AR at 201, 257, 260-63.] Due to the risks associated with her genetic mutation and pursuant to her doctors' advice, plaintiff underwent, among other medical procedures, a hysterectomy, a bilateral salpingo-oophorectomy, an appendectomy, and bilateral mastectomies. [AR at 175-78, 257, 363-64.] On September 1, 2006, immediately after her bilateral mastectomies, plaintiff also underwent breast reconstruction surgery, performed by Dr. Tan. [AR at 363-72.] On November 28, 2006, Dr. Tan performed a second breast reconstruction surgery to correct plaintiff's breast asymmetry. [AR at 334-37.] On February 27, 2007, plaintiff underwent nipple reconstruction surgery, also performed by Dr. Tran. [AR at 325-26.] Dr. Tran examined plaintiff several times during follow-up appointments pertaining to her reconstruction surgeries. [AR at 322, 323, 332-33, 344-45, 347-48, 349-50.] In addition to her chemotherapy, radiation, and various operations, plaintiff also takes medication that helps to prevent her from re-developing cancer. [AR at 307, 309.]

On February 16, 2007, Dr. Tan completed a Residual Functional Capacity Questionnaire concerning plaintiff's impairments. [AR at 315-18.] Dr. Tan noted that plaintiff's physical symptoms included pain, numbness in her hands, fatigue, and loss of some of her teeth as a result of chemotherapy. [AR at 315.] He indicated that plaintiff's impairments have lasted or could be expected to last twelve months and that she was not a malingerer. [Id.] Dr. Tan also indicated that plaintiff experienced the following psychological symptoms: memory deficits, easy distractibility, anxiety/panic attacks, decreased energy, and sleep disturbance as she is "up every hour." [AR at 316.] With regard to plaintiff's work related limitations, Dr. Tan opined that plaintiff was able to sit for one hour at a time, and, with a break each hour, she could sit for a total of eight hours in an eight-hour workday. [AR at 316-17.] He also asserted that plaintiff could stand for 30 minutes at a time, and that she could stand for a total of one hour and walk for a total of one hour in an eight-hour workday. [AR at 316.] He also opined that she would need to take unscheduled ten-minute breaks during the workday. [AR at 317.] Dr. Tan estimated that due to plaintiff's impairments, she would be absent from work one day each month. [AR at 318.] Dr. Tan did not estimate when plaintiff would be able to return to work, but instead asserted that the decision should be made by plaintiff's oncologist. [Id.]

### 1. **Medical Improvement**

Once a claimant is found disabled, a presumption of continuing disability arises. See Bellamy v. Secretary of Health and Human Services, 755 F.2d 1380, 1381 (9th Cir. 1985). Although the claimant retains the burden of proof, this presumption shifts the burden of production to the Commissioner to produce evidence to meet or rebut this presumption. Id. Disability benefits cannot be terminated unless the Commissioner presents substantial evidence demonstrating medical improvement in the claimant's impairment so that the claimant is able to engage in SGA. See 42 U.S.C. § 423(f); Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983). Medical improvement is defined as any decrease in the medical severity of the impairment that

/
/
/

was present at the time of the most recent medical decision favorable to the claimant. See 20 C.F.R. §§ 404.1594(b)(1), (c)(1).[4]

In the decision, the ALJ determined that "[b]ased on [plaintiff's] treatment for breast cancer and reconstructive breast surgeries," plaintiff was disabled from October 29, 2004, through April 1, 2007. [AR at 24.] In finding that plaintiff was disabled during that time period, the ALJ credited Dr. Tan's assessment of plaintiff's RFC, but only to the extent that it applied to plaintiff's limitations through April 1, 2007. [AR at 24, 27.] From April 2, 2007, onward, the ALJ concluded that plaintiff's medical condition had improved and that plaintiff was no longer disabled. [AR at 25-28.] In coming to that conclusion, the ALJ asserted that the medical evidence showed that plaintiff had no complaints on March 13, 2007, and April 4, 2007, during follow-up examinations with Dr. Tan [AR at 322-23]; plaintiff had completed her breast reconstruction procedures by April 2, 2007 (with the exception of nipple tattooing, a cosmetic procedure); and there was no evidence that plaintiff had "recurrence of breast cancer, subjective complaints, weight change, limitation in activities of daily living, or other objective abnormalities since April 2007." [AR at 26-27.]

The ALJ's finding that plaintiff had "no complaints" during her March 13, 2007, and April 4, 2007, surgery follow-up appointments with Dr. Tran was an inadequate basis for finding that plaintiff's medical condition had generally improved. [AR at 26-27, 322-23.] Put in proper context, plaintiff's medical records documenting these two follow-up examinations indicate that plaintiff's lack of complaints during her examinations may have pertained to her satisfaction with the look of her reconstructed breasts and nipples, as well as her successful post-operation recovery, rather

---

[4] To determine whether medical improvement has occurred, the Commissioner (or ALJ) compares the claimant's current condition with the condition at a comparison point in the past. See 20 C.F.R. § 404.1594(b)(7). The comparison point date ("CPD") is the date of the most recent favorable medical determination. Id. The CPD can be the date the claimant was first found disabled, or a later date if a continuing disability review determined that the claimant was still disabled. See 20 C.F.R. §§ 404.1594(b)(1), (c)(1). The ALJ must compare the claimant's condition at the CPD to the claimant's present condition to determine whether there has been improvement, based on symptoms, signs and laboratory findings. Id. A temporary improvement does not warrant a finding of medical improvement. See 20 C.F.R. § 404.1594(c)(3)(iv). If no medical improvement has occurred, the claimant's disability does not cease. 20 C.F.R. § 404.1594(a).

than her overall symptoms and medical condition. [AR at 322-23.] In making an evidentiary consideration, the ALJ must consider all of the relevant evidence in context and may not misconstrue portions of the record to bolster his findings. See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); see also Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"). Plaintiff's medical record from March 13, 2007, documents that two weeks after her nipple reconstruction surgery, her operation wounds were healing well, and she was "feeling well and [had] done well throughout her postoperative course." [AR at 323.] The medical record from April 4, 2007, shows that six weeks after her surgery, plaintiff had no sign of infection and was "pleased with her results." [AR at 322.] Aside from discussing plaintiff's progress concerning her reconstructive surgeries, neither medical record even addresses, let alone shows, improvements concerning plaintiff's underlying cancer impairment, her related symptoms,[5] or her additional medical treatments. These records do not constitute substantial evidence showing that plaintiff's medical condition had improved since April 1, 2007, the date plaintiff was last found to be disabled by the ALJ. 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(b)(7). Since plaintiff's examinations on March 13, 2007, and April 4, 2007, only pertained to a limited part of her medical treatment and progress -- i.e., her breast and nipple reconstruction -- it was erroneous for the ALJ to take statements that plaintiff made during these examinations out of context in concluding that her medical condition had generally improved.

Next, the ALJ's finding that there was a lack of evidence showing a "recurrence of breast cancer, subjective complaints, weight change, limitation in activities of daily living, or other objective abnormalities since April 2007," was also an improper basis for concluding that plaintiff's medical condition had improved as of April 2, 2007. The ALJ's assertion that there was a lack of evidence in the record showing that plaintiff was limited in her daily activities or that she had

---

[5] For example, the March 13, 2007, and April 4, 2007, records do not mention plaintiff's subjective symptoms that were reported in her prior medical records, such as dizziness, fatigue, forgetfulness, confusion, and weakness, let alone show that the symptoms had improved.

subjective complaints after April 1, 2007, ignores plaintiff's May 23, 2007, testimony, much of which addressed her persistent subjective symptoms, limitations in daily activities, and health problems. [See e.g. AR at 540 (testimony concerning eye problems, forgetfulness, confusion, reliance on family to take care of plaintiff, inability to take care of household paperwork, and difficulty walking), 541 (fatigue and confusion), 542 (problems with her hands, feet, and knees, as well as problems with muscle spasms, dizziness, and cramps).] Plaintiff's testimony concerning her limitations and symptoms constituted admissible evidence, and it was improper for the ALJ to simply ignore her testimony in finding that her medical condition had improved. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion). Furthermore, as discussed below, the ALJ provided inadequate reasons for discrediting plaintiff's testimony.

Moreover, in citing only a supposed lack of evidence corroborating the continuation of plaintiff's impairment after April 1, 2007, the ALJ placed on plaintiff the burden of producing evidence showing that her disability continued after that date. As explained herein, once the ALJ determined that plaintiff was disabled, it was the Commissioner's burden to produce evidence establishing that plaintiff's condition had medically improved. See Mendoza v. Barnhart, 436 F.Supp.2d 1110, 1113 (C.D.Cal. 2006) ("Once a [plaintiff] has been found to be disabled, a presumption of continuing disability arises in her favor, and the Commissioner bears the burden of producing evidence sufficient to rebut this presumption of continuing disability.") (internal quotations omitted). The ALJ's decision does not demonstrate that the Commissioner's burden of production has been met.

The medical evidence includes records concerning a consultative medical examination completed in February 2007 by Dr. Homayoun Saeid at the request of the Department of Social Services. [AR at 291-301.] After examining plaintiff and reviewing her medical records, Dr. Saeid asserted that plaintiff is able to carry twenty pounds occasionally and ten pounds frequently. [AR at 296, 298.] He also opined that she can stand or walk for a total of six hours each day and she can sit for a total of six hours each day. [AR at 296, 298-99.] Dr. Saeid found that plaintiff's upper

and lower extremity movements are normal [AR at 295], although he recognized that she has some manipulative limitations. [AR at 300.]

Dr. Saeid's assessment, however, does not constitute substantial evidence showing that plaintiff's medical condition has improved because the ALJ explicitly rejected Dr. Saeid's assessment. Specifically, the ALJ asserted that he did not give weight to Dr. Saeid's findings as they relate to plaintiff's limitations from October 29, 2004, to April 1, 2007, "because they are not consistent with the medical evidence of record and do not adequately consider the effects of [plaintiff's] treatment." [AR at 24.] However, to the extent that the ALJ then also relied on Dr. Saeid's assessment in finding that plaintiff's medical condition improved by April 2, 2007 [see AR at 27], the ALJ's selective reliance on Dr. Saeid's assessment was improper. It is impermissible for the ALJ to "reach a conclusion first, and then attempt to justify it by" selectively rejecting and crediting "evidence in the record" at various parts of his decision. Gallant, 753 F.2d at 1456. Because the ALJ failed to provide adequate reasons for both rejecting and partially crediting Dr. Saeid's assessment of plaintiff's functional capacity, Dr. Saeid's assessment cannot constitute substantial evidence showing plaintiff's medical improvement.

Since the ALJ apparently misinterpreted the significance of plaintiff's lack of complaints during her March 13, 2007, and April 4, 2007, examinations; disregarded the evidence showing that plaintiff continued to have subjective complaints and limitations after April 1, 2007; and shifted the burden of production to plaintiff, remand is necessary to properly determine whether plaintiff's medical condition sufficiently improved after April 1, 2007.[6]

---

[6] To the extent that the ALJ determined that plaintiff's medical condition had improved because he found that she did not receive medical treatment after April 1, 2007, remand is necessary for the ALJ to consider the updated medical evidence. The medical evidence not considered by the ALJ indicates that after the hearing, plaintiff continued to seek medical treatment for pain, fatigue, dizziness, and confusion (symptoms similar to plaintiff's subjective complaints during the period in which the ALJ determined that she was disabled) in addition to other medical problems such as hypercalcemia and an enlarged parathyroid gland. [See e.g. AR at 390 (July 30, 2007, dizziness, memory loss, weakness, and vision changes), 425-29 (June 14, 2007, enlarged parathyroid gland and hypercalcemia), 433 (June 7, 2007, abdominal pain and weakness), 485 (May 31, 2007, drowsiness, confusion, and generalized pain), 496 (May 25, 2007, weakness, sluggishness, and generalized body ache).] On remand, the ALJ should consider the updated medical evidence, and, if necessary, further develop the medical record to determine if

## 2. Rejection of Dr. Tan's Assessment

In the decision, the ALJ stated that he interpreted Dr. Tan's assessment of plaintiff's symptoms and limitations as suggesting that she is "essentially unable to perform sedentary work on a regular and continuous basis." [AR at 23.] Although the ALJ gave weight to Dr. Tan's assessment as it applied from October 29, 2004, to April 1, 2007, he explicitly rejected Dr. Tan's assessment as it applied to the period after April 1, 2007.[7] [AR at 24, 27.]

In evaluating medical opinions, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). The ALJ must provide specific, legitimate reasons for rejecting a treating physician's opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); see also Social Security Ruling 96-2p[8] ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The ALJ's rejection of Dr. Tan's RFC assessment was largely premised on the ALJ's conclusion that plaintiff's condition had medically improved. Since, as explained herein, the Court

---

there is evidence that plaintiff's medical condition sufficiently improved after April 1, 2007, to warrant the cessation of her disability benefits.

[7] The ALJ also rejected Dr. Tan's opinion that plaintiff had "psychiatric" symptoms, because there was insufficient evidence that plaintiff experienced mental limitations for a continuous twelve-month period. [AR at 27.]

[8] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

finds that the ALJ's conclusion of medical improvement was inadequately supported, once the medical evidence has been properly reconsidered, the ALJ must also reconsider Dr. Tan's RFC assessment as it applies to plaintiff's limitations after April 2, 2007.

Furthermore, in rejecting Dr. Tan's assessment for the period after April 1, 2007, the ALJ asserted that it is unclear how long Dr. Tan intended his assessment to be applicable. [AR at 27.] If there are ambiguities or inadequacies in the record concerning medical treatment or diagnoses that may affect the determination of disability, the ALJ has a duty to further develop the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288). When medical records are inadequate to determine whether a claimant is disabled, the ALJ must recontact the medical source, including the treating physician if necessary, to clarify the ambiguity or to obtain additional information pertaining to the claimant's medical condition. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). It was erroneous for the ALJ to partially reject Dr. Tan's opinion without first clarifying how long the assessment was meant to apply. On remand, ALJ should re-contact Dr. Tan to clarify how long he intended his RFC assessment to apply.

### B.  PLAINTIFF'S TESTIMONY

Plaintiff contends that the ALJ failed to properly consider plaintiff's testimony and make proper credibility findings. [JS at 12-17, 20.] Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms, including degree of pain and functional limitations, the ALJ must make explicit credibility findings. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995, as amended April 9, 1996) (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when

there is medical evidence of an underlying impairment). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918. Absent evidence showing that a plaintiff is malingering, the ALJ must clearly identify evidence in the record undermining the plaintiff's testimony to properly discredit his alleged limitations. See id.; see also Reddick, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As the record contains no evidence of malingering by plaintiff,[9] the ALJ was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, the ALJ asserted that plaintiff's "statements concerning the limiting effects of her symptoms [from October 29, 2004, to April 1, 2007,] are generally credible." [AR at 24.] However, later in the decision, the ALJ discredited plaintiff's testimony concerning her subjective symptoms and limitations to the extent she testified that they existed after April 1, 2007. [AR at 27.] In finding plaintiff's subjective symptoms and limitations only partially incredible, the ALJ asserted that the objective medical evidence did not support her subjective symptoms after April 1, 2007. He also relied on his conclusion that plaintiff's condition had medically improved after that date. [AR at 26-27.] The Court has considered the ALJ's reasons for discrediting plaintiff's subjective symptoms, and finds that they are neither clear nor convincing.

---

[9] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so. Dr. Tan asserted in his functional assessment that plaintiff is not a malingerer. [AR at 315.]

13

First, the ALJ failed to provide sufficiently clear and convincing reasons for his conclusion that plaintiff was <u>not</u> credible concerning her limitations and symptoms to the extent that they existed <u>after</u> April 1, 2007, but that she <u>was</u> credible concerning the existence of her symptoms and limitations <u>on and before</u> that date. To properly reject a plaintiff's alleged limitations, the ALJ must provide reasoning "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995). Because the ALJ did not adequately explain how he determined that plaintiff's symptoms and limitations were credible, but only during a specific period of time, the Court is not confident that the ALJ's credibility determination was not arbitrary.

Further, an ALJ cannot rely solely on the absence of disability findings to reject a plaintiff's credibility. <u>See</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-47 (9th Cir. 1991) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits <u>solely</u> because the degree of pain alleged by the claimant is not supported by objective medical evidence.") (emphasis added). A claimant need not produce evidence of pain other than her own subjective testimony. <u>Smolen</u>, 80 F.3d at 1282 ("The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof."). Nor must a claimant present objective medical evidence of a causal relationship between the impairment and the type of symptom. <u>See id.</u> at 1282; <u>see also</u> <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1433 (9th Cir. 1995) ("[O]nce an impairment is medically established, the ALJ cannot require medical support to prove the severity of the pain."). Rather, the claimant need only "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." <u>Bunnell</u>, 947 F.2d at 344 (internal quotations omitted). This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain and other such symptoms," <u>Smolen</u>, 80 F.3d at 1282, such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual." <u>Id.</u> (internal quotations omitted).

Here, as the ALJ recognized, the objective medical evidence demonstrates that plaintiff suffered from breast cancer and that she underwent a series of operations and treatments to treat her existing cancer, to prevent her from developing additional cancers, and to reconstruct her

breasts and nipples. [AR at 23, 153-62, 175-78, 188-94, 270, 325-26, 334-37, 363-72.] Because plaintiff produced medical evidence of underlying impairments that the ALJ determined would produce some of her alleged symptoms [AR at 27], objective medical findings are not required to support their alleged severity. Bunnell, 947 F.2d at 344-45. Thus, a lack of objective evidence corroborating the extent or duration of plaintiff's symptoms was an insufficient reason, on its own, for the ALJ to find plaintiff incredible.

The ALJ's additional reasons for finding plaintiff incredible were likewise inadequate. First, plaintiff's lack of complaints during her March 13, 2007, and April 4, 2007, follow-up appointments concerning her reconstruction surgeries was an insufficient basis for finding her subjective complaints after April 1, 2007, incredible. As discussed herein, the ALJ failed to show that plaintiff's lack of complaints concerning her reconstructive surgeries had *any* bearing on her overall subjective symptoms and limitations. As the ALJ did not explain how plaintiff's failure to complain about her subjective symptoms at her follow-up appointments for her reconstructive surgeries made her alleged symptoms and limitations after April 1, 2007, incredible, the Court cannot conclude that the ALJ's credibility determination on this basis was not arbitrary. Orteza, 50 F.3d at 750. Second, since the Court finds that the ALJ did not properly show that plaintiff's medical condition had actually improved after April 1, 2007, to the extent that the ALJ relied on improvement in finding plaintiff incredible, that too was improper. Third, insomuch as the ALJ found that plaintiff was not credible concerning her continuing subjective symptoms after April 1, 2007, because there were no medical records showing her complaints after that date, the ALJ must consider the updated medical evidence recording plaintiff's subjective complaints after her May 23, 2007, hearing. Therefore, remand is warranted to reconsider plaintiff's credibility concerning her symptoms and impairments after April 1, 2007.

/
/
/
/
/

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to: 1) reevaluate the medical evidence to determine if plaintiff's medical condition significantly improved to warrant a cessation of her disability benefits; 2) clarify and reexamine Dr. Tan's assessment of plaintiff's functional limitations as they pertain to the time period after April 1, 2007; and 3) reconsider plaintiff's credibility, testimony, and RFC, especially in light of the re-examined medical evidence. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 30, 2009

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE